## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**THOMAS McCROREY,**

        **Plaintiff,**

    **vs.**                                                 **Civ. No. 12-1325 JCH/LAM**

**JOHN McHUGH, SECRETARY,**
**DEPARTMENT OF THE ARMY,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendant's Motion To Dismiss or in the Alternative Motion for Summary Judgment*.  [Doc. 53]  Plaintiff filed a response [Doc. 59], and Defendant filed a reply [Doc. 64].  Having reviewed the motion, briefs, and relevant law, the Court concludes that the motion for summary judgment should be granted.

## BACKGROUND

The following is a statement of the facts viewed in the light most favorable to Plaintiff.

Plaintiff is an African American male.  He is a security guard at White Sands Missile Range, under a contract with Chenega Security and Protection Services.

Plaintiff makes two claims for the year 2010.  First, Plaintiff was not selected for the Security Guard GS-0085 position, Vacancy Announcement WTBW10355643D. [Doc. 1, ¶ 1(b)] Second, Carolina Childress, Contracting Officer Representative responsible for monitoring the Chenega contract, "was responsible for preventing black security guards employed by the

Chenaga [sic] Security and Protection Services from being assigned to work together." [Doc. 1, ¶ 11(a)] Plaintiff filed charges of race discrimination with the Equal Employment Opportunity Office. [Doc. 1-2] On September 28, 2012, the Final Agency Decision ("FAD") denied both claims.[1] [Doc. 1-5]

With regard to the first 2010 claim, the FAD determined that Plaintiff failed to demonstrate that he had applied for the position under WTBW10355643D. There was unrebutted evidence that Plaintiff's application was instead submitted under Vacancy Announcement WTBW10355643.

With regard to the second 2010 claim, the FAD applied the common law agency test and determined that Plaintiff was not an employee of White Sands Missile Range for purposes of EEO discrimination claims, but instead was an employee of Chenega; Plaintiff therefore lacked standing to pursue this claim in the federal administrative process. In addition, there was evidence that Childress had no influence over assignments for Chenega security guards, but that assignments were decided by Chenega management. And there was evidence that Plaintiff was assigned to work with other black security guards on some occasions.

Plaintiff makes two claims related to his EEO complaint filed in 2011 [referred to herein as the "2011 claims"]. In 2010, Plaintiff applied for two positions: Security Guard GS-0085-04 position, Vacancy Announcement WTBW10355643; and Security Guard GS-0085-05 position, Vacancy Announcement WTBW101132270CR. In 2011, Plaintiff was notified that he was not referred for further consideration and was not selected for either position. Plaintiff filed charges of race discrimination and retaliation with the EEO. [Doc. 1-3; Doc. 1-4] On July 17, 2012, the FAD denied both claims. [Doc. 1-4]

---

[1] The Complaint was filed within 90 days of receipt of this FAD. *See also* Doc. 53-3, pp. 17-18 (showing receipt by Plaintiff's counsel on Oct. 15, 2012).

With regard to the 2011 claims, the FAD assumed arguendo that Plaintiff made a prima facie case but concluded that the employer articulated legitimate and nondiscriminatory reasons not to select Plaintiff.   There was evidence that the Resumix system was used to screen applicants based on their resumes and Plaintiff scored below the cutoff required for referral for further consideration.  Plaintiff's resume scored a "1" while a score of "3" or "2" was required for each of the two positions, respectively.  There was evidence that Resumix did not consider either race or prior EEO activity, and that for one position at least five of the candidates referred for further consideration were African American.  Veteran status was not considered and is not a protected basis for filing an EEO complaint.  The FAD concluded that Plaintiff failed to show that the Army's nondiscriminatory explanations were a pretext for discrimination.

Both FADs informed Plaintiff that any civil action must be filed within ninety days of receipt of the FAD.  [Doc. 1-4, p. 10; Doc. 1-5, p. 10]  Plaintiff filed the Complaint on December 27, 2012.  [Doc. 1]

## LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it could have an effect on the outcome of the suit.  *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014).  A dispute over a material fact is genuine if the evidence presented could allow a rational jury to find in favor of the nonmoving party.  *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party.  *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007).  The court

cannot weigh the evidence and determine the truth of the matter, but instead determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

A defendant seeking summary judgment bears the initial burden of showing that there is no genuine dispute as to a material fact and the defendant is entitled to judgment as a matter of law; if the defendant does so, the burden shifts to the plaintiff. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). The plaintiff cannot rest on his pleadings, but must go beyond the pleadings and "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000). The plaintiff must "set forth specific facts" from which a rational trier of fact could find in the plaintiff's favor, identifying those facts in the affidavits, deposition transcripts, or incorporated exhibits. *Adler*, 144 F.3d at 671 (internal quotation marks omitted). The plaintiff cannot rest on ignorance of the facts, on speculation, or on unsubstantiated conclusory assertions. *Rocky Mountain Rogues, Inc. v. Town of Alpine*, 375 Fed. Appx. 887, 891 (10th Cir. 2010) (internal quotation marks omitted); *see Harvey Barnett, Ind. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003).

Under Title VII it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of discrimination on the basis of race, a plaintiff must demonstrate that:

> (1) He is a member of a protected class;
> (2) He suffered an adverse employment action;
> (3) He qualified for the position at issue; and
> (4) Circumstances give rise to an inference of unlawful discrimination (e.g., plaintiff was treated less favorably than others similarly situated).

*Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012); *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1192.

A plaintiff may prove a Title VII violation either by direct evidence of discrimination or through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The plaintiff's burden at the prima facie stage is "not onerous"; the plaintiff is required to present "a small amount of proof necessary to create an inference of discrimination or retaliation," by a preponderance of the evidence. *Smothers*, 740 F.3d at 539 (internal quotation marks omitted). If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Khalik*, 671 F.3d at 1192; *Smothers*, 740 F.3d at 539 (stating that defendant's burden is one of production, not persuasion). If the defendant does so, the burden shifts back to the plaintiff to show that the plaintiff's protected status was a determinative factor in the decision or that the defendant's explanation is pretextual. *Khalik*, 671 F.3d at 1192. Evidence of pretext may include evidence that the plaintiff was treated differently from other similarly situated employees. *Smothers*, 740 F.3d at 539. The plaintiff bears the ultimate burden of demonstrating that the defendant's stated reason is a pretext for unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 804.

Title VII proscribes discrimination against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that:

(1) He was engaged in protected opposition to discrimination;

    (2)  A reasonable employee would have found the challenged action materially
          adverse; and

    (3)  A causal connection existed between the protected activity and the materially
          adverse action.

*Khalik*, 671 F.3d at 1193.  The challenged action is materially adverse if it might have dissuaded

a reasonable employee from making a charge of discrimination.  *Green v. Donahoe*, ___ F.3d

___, 2014 WL 3703823, *10 (10th Cir. 2014).  An employee who does not have direct evidence

of retaliation may employ the three-step burden-shifting analysis of *McDonnell Douglas*.  *Id.*


**DISCUSSION**

**I.  The 2010 Claims**

    The Complaint alleges that Plaintiff was not selected for the Security Guard GS-0085

position, Vacancy Announcement WTBW10355643D.  Defendant asserts that Plaintiff did not

apply for Vacancy Announcement WTBW10355643D.  [Doc. 53, UMF #7]  Plaintiff disputes

this, apparently claiming that he applied for three security guard positions, though under a

different vacancy announcement number.  [Doc. 59, pp. 3, 9-11; Doc. 59-2]  Plaintiff asserts that

he was given the wrong number; however, Plaintiff admitted in his deposition that he had never

applied for Vacancy Announcement WTBW10355643D.  [Doc. 53-1, pp. 39-40]  Plaintiff does

not identify any third application further, and fails to show exhaustion with respect to some

unidentified third application.  Without a showing of exhaustion, no claim regarding any third

application is properly before this Court.  *See Green*, 2014 WL 3703823, *4.  The Court

concludes that Defendant has shown that he is entitled to summary judgment on this point.

    With respect to Plaintiff's claim that Childress prevented black security guards from

working together, Plaintiff identifies no evidence to show that Childress had a discriminatory

motive and acted on that basis to prevent African American guards from working together.  In

addition, the Court agrees with Defendant's argument that this claim does not allege an "adverse employment action" under Title VII. "Although the Tenth Circuit liberally defines an 'adverse employment action,'" it "does not extend to a mere inconvenience or an alteration of job responsibilities." *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1212-13 (10th Cir. 2003). An adverse employment action must be "materially adverse" to the employee's job status and result in a significant change in employment status—such as failure to be promoted, being fired, being reassigned with significantly different responsibilities, or receiving a significant change in benefits. *Id.* at 1213; *Green*, 2014 WL 3703823, *11 (stating that actions are materially adverse, e.g., if they result in employee losing salary); *Hillig v. Rumsfeld*, 381 F.3d 1028, 1033 (10th Cir. 2004) (recognizing that reassignment requiring plaintiff to develop new skills did not constitute adverse employment action, and requiring more than de minimis impact on employee's future job opportunities). Considering the standard, the Court concludes that not being assigned to work with other black security guards does not rise to the level of being an "adverse employment action," even if Plaintiff were able to establish the other elements.

The Court concludes that Defendant is entitled to summary judgment on both of Plaintiff's 2010 claims.


## II. The 2011 Claims

Defendant moves to dismiss the claims relating to the 2011 applications: non-selection for referral on Vacancy Announcements WTBW10355643 and WTBW101132270CR. Defendant argues first, that the Complaint was time-barred, and second, that Plaintiff failed to identify sufficient evidence of discrimination or retaliation.

### A.  Timeliness of Filing

The Complaint asserts:  "Plaintiff has filed this lawsuit for race discrimination within the 90-day period allotted by the Department of the Army to file this lawsuit."  [Doc.1, ¶ 23]  The FAD denying the 2011 claims was issued on July 17, 2012.  [Doc. 1-4]  Plaintiff filed the Complaint on December 27, 2012.  [Doc. 1]

Defendant moves to dismiss or, alternatively, for summary judgment—arguing that Plaintiff failed to file the Complaint within 90 days of receipt of the FAD.  [Doc. 53, pp. 10-12]  Defendant attached as an exhibit a certified postal receipt showing delivery to Plaintiff's attorney on July 19, 2012.  [Doc. 53-4, pp. 11-12]  The Complaint was filed about 161 days later.

Plaintiff responds that the motion relies on matters outside the pleadings and must be treated as a summary judgment motion.  [Doc. 59, pp.1, 6-7]  *See* Fed. R. Civ. P. 12(d).  The Court agrees that the motion should be treated as a motion for summary judgment.

Plaintiff was required to file his Complaint within 90 days of receipt of the FAD.  42 U.S.C. § 2000e-5(f)(1).  This 90-day time limit is not "'a jurisdictional prerequisite,'" but is "'a condition precedent to suit.'"  *Mosley v. Pena*, 100 F.3d 1515, 1517 (10th Cir. 1996) (quoting *Million v. Frank*, 47 F.3d 385, 389 (10th Cir. 1995)).

The 90-day time limit is strictly administered.  Filing a complaint 96 or 94 days after receipt of the right-to-sue letter is too late.  *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (affirming dismissal of complaint filed 96 days later); *Mosley*, 100 F.3d at 1518 (affirming summary judgment on complaint filed 94 days after receipt of FAD by attorney, as shown by certified mail receipt).  "Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants."  *Baldwin Cnty. Welcome Ctr.*, 466 U.S. at 152.

Defendant's summary judgment motion set forth the following as Fact #14:

> 14.  Plaintiff and his attorney received a copy of the FAD for EEO Claim Number ARWSMR11JUN02803 by certified mail on July 19, 2012.  Depo. pp. 81-83; Depo. Exhibits #15 & 16.

[Doc. 53; Doc. 53-1, pp. 81-83]  Plaintiff's response disputes Fact #14, asserting that Plaintiff himself did not receive a copy of the July 17, 2012 FAD on July 19, 2012.  Plaintiff cites his deposition testimony that he had not seen that FAD, had moved from the address shown on the certificate of service, and did not personally receive either FAD.  [Doc. 59, p. 4; Doc. 59-1, pp. 76, 80]  Plaintiff disputes Defendant's reliance on Plaintiff's deposition to show that Plaintiff testified that he and his attorney had received the July 17, 2012 FAD.  [Doc. 59, pp. 4-5, 7]  The Court agrees that Plaintiff's testimony constitutes Plaintiff merely reading tracking information on exhibits and provides no independent support for Defendant's Fact #14.

It is not necessary, however, that Plaintiff personally received the FAD.  "For purposes of determining when the plaintiff received notice of the EEOC's final action, notice to an attorney is imputed to the client."  *Mosley*, 100 F.3d. at 1518.  And receipt of the FAD in the attorney's office starts the 90-day period, even if the attorney does not see the FAD until some later date. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 93 (1990).  Defendant presented a copy of a certified mail receipt and tracking inquiry, showing receipt of the FAD by Plaintiff's attorney on July 19, 2012.  [Doc. 53-4, pp. 11-12]

Plaintiff disputes the allegation in Fact #14 that Plaintiff's attorney received the FAD on the date shown by the receipt and tracking inquiry.  The response asserts that Plaintiff's attorney "did not receive the FAD by certified mail on July 19, 2002."  [Doc. 59, p. 4]  The response attaches a declaration from Plaintiff's counsel which admits that the address shown on the certified postal receipt is correct, but which avers that neither Plaintiff's counsel nor anyone on

Plaintiff's behalf received the July 17, 2012 FAD on July 19, 2012.  [Doc. 59-4]  The declaration states that:  Plaintiff's counsel does not recognize the signature on the postal receipt; the signatory is not an employee of Plaintiff's counsel; three law firms share the office; and many law firms share the same street address but with a different building number than shown on the postal receipt.[2]  [Doc. 59-4]  Plaintiff argues that there is a genuine issue of material fact as to when Plaintiff's attorney received the FAD; asserting that the Court must draw all reasonable inferences in favor of Plaintiff, the response asserts that Defendant is not entitled to summary judgment.  [Doc. 59, p. 7]  Plaintiff fails to identify any evidence regarding the date on which the FAD was actually received in the office of Plaintiff's counsel.

But Plaintiff cannot survive the summary judgment motion by merely setting forth evidence that Plaintiff's counsel did not receive the FAD on the specific date of July 19, 2012. The Tenth Circuit holds that the 90-day time limit is a condition precedent, and that the plaintiff has the burden of proving that a complaint was filed within 90 days of receipt of the FAD. *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1167-68 (10th Cir. 2007); *Mosley*, 100 F.3d at 1517. The Complaint was filed on December 27, 2012.  Ninety days before this date is September 28, 2012.  Plaintiff had the burden to set forth specific facts—in affidavits, depositions, or other record evidence—to show that the FAD was received in the attorney's office on or after September 28, 2012.  *See Sealock*, 218 F.3d at 1209 (stating that plaintiff must designate specific facts to show element essential to plaintiff's case); *Adler*, 144 F.3d at 671 (stating that party with burden of proof must identify specific facts in affidavits, depositions, etc., allowing a finding in

---

[2] The response attaches two additional exhibits, copies of emails, asserted to support the belief of Plaintiff's counsel that the 2011 claims were still being investigated in July 2012.  [Docs. 59-5, 59-6]  But these emails relate to the 2010 claims—not the 2011 claims.  The bottom of each page shows "ROI Supp claim 5149."  The first email specifically references "Agency No. ARWSMR10NOV05149," the number relating to the 2010 claims.  [Doc. 59-5, p. 2; Doc. 1-5]  The second email specifically refers to the issues raised in the 2010 claims.  [Doc. 59-6]  The Court does not believe there is a claim that the Complaint was untimely with respect to the 2010 claims.

plaintiff's favor); *Irwin*, 498 U.S. at 93 (stating that receipt in attorney's office starts 90-day period, even if attorney does not see FAD until later). Plaintiff was not entitled to rest on the allegation in the Complaint that it was filed "within the 90-day period allotted by the Department of the Army." [Doc.1, ¶ 23] A bare allegation that the Complaint was filed within 90 days of receipt of the FAD, or an assertion that Plaintiff does not know the date of receipt, is an insufficient response to Defendant's evidence. *See Rocky Mountain Rogues, Inc.*, 375 Fed. Appx. at 891 (stating that plaintiff cannot rest on ignorance of facts, on speculation, or on unsubstantiated conclusory allegations); *Harvey Barnett, Ind.*, 338 F.3d at 1136 (same).

In *Mosley*, the record contained a copy of a signed postal receipt showing that the plaintiff's attorney received the FAD 94 days before the complaint was filed. *Mosley*, 100 F.3d at 1518. The plaintiff relied on unspecified postal procedures and handwritten numbers on the envelope to support her argument that her attorney received the FAD 4 days later than shown on the postal receipt. *Id*. Holding that the plaintiff failed "to point to any record evidence to support her bare allegation" that the FAD was not received on the date shown on the postal receipt, the Tenth Circuit affirmed the grant of summary judgment for untimely filing. *Id*.

The Court emphasizes that it is not finding that the FAD was received in the office of Plaintiff's attorney on July 19, 2012—when Plaintiff presented his attorney's declaration that she did not receive it on that date. *See Shero*, 510 F.3d at 1200 (requiring court to view record in light most favorable to non-movant). Instead, the Court concludes that Plaintiff failed to carry his burden to identify specific evidence showing that the FAD was not received in the attorney's office until after September 28, 2012. Since Plaintiff failed to show timely filing of the Complaint, Defendant is entitled to summary judgment.

**B.  Merits of the 2011 Claims**

**(1)  Direct evidence**

Plaintiff argues he has identified direct evidence of discrimination.  [Doc. 59, p. 8]

Direct evidence of a discriminatory basis for an employment decision would make the

*McDonnell Douglas* analysis inapplicable.  *Heim v. Utah*, 8 F.3d 1541, 1546 (10th Cir. 1993).

First, Plaintiff cites his own deposition testimony that he heard that Donald Morrison had

made racial slurs.  [Doc. 59-1, p. 85]  Plaintiff testified that "[s]omeone that works there said

they overheard … Morrison … making some racial slurs."  [Doc. 59-1, p. 85]

Even if this hearsay were admissible, the Tenth Circuit has "emphasized that 'stray

remarks in the workplace' based on sex stereotypes do not constitute direct evidence of

discrimination."  *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1217 (10th Cir. 2013) (quoting *Heim*, 8

F.3d at 1547); *see Argo v. Blue Cross & Blue Shield*, 452 F.3d 1193, 1199 (10th Cir. 2006)

(emphasizing that on summary judgment hearsay statements should be disregarded as

inadmissible at trial).   "Statements showing 'an existing policy which itself constitutes

discrimination' are direct evidence of discrimination."  *Heim*, 8 F.3d at 1546.  In contrast, a

discriminatory statement, from which the cause of an employment decision might be inferred,

does not constitute direct evidence.  *Id.* at 1546-47.  A boorish and inappropriate statement

expressing the personal opinion of the employer does not show that he acted with discriminatory

intent with respect to the employment decision at issue.   *Id.* (holding that employer's

inappropriate statement that he hated having women in the office is an inferential statement

arguably allowing inference of discriminatory intent rather than direct evidence of discrimination

against women); *Ramsey v. City of Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990) (holding that

director's statements about women's place in the workplace were indirect evidence of

discrimination, because they did not constitute expression of an existing policy constituting discrimination); *Hysten v. Burlington N. Santa Fe Ry Co.*, 415 Fed. Appx. 897, 911 (10th Cir. 2011) (unpublished)[3] (emphasizing that evidence of discrimination in the decision-making process must be distinguished from stray remarks, statements by non-decisionmakers, or statements by decisionmakers unrelated to the decision-making process).  Stereotyped remarks may provide evidence that discrimination played a part, but the plaintiff must still show that the employer actually acted on the discriminatory basis in making his decision.  *Heim*, 8 F.3d at 1547; *Ramsey*, 907 F.2d at 1008.

Thus "stray remarks" by Morrison, unrelated to the decision-making process itself, do not constitute direct evidence of a discriminatory action.  *Heim*, 8 F.3d at 1547.  And Plaintiff offers no evidence to show that Morrison was even involved in the decision-making process resulting in Plaintiff's failure to be referred for further consideration.

Second, Plaintiff cites his own deposition testimony that it was Plaintiff's understanding that Childress did not want African Americans working together. [Doc. 59-1, pp. 18-19, 23] Plaintiff's response asserts that this prevented his being able to obtain jobs for which he applied, and that this was part of a pattern of discrimination.  [Doc. 59, pp. 8, 89]  These unclear assertions, even if Plaintiff's impression about Childress's preference were admissible, do not constitute direct evidence of discrimination.  *See Heim*, 8 F.3d at 1546-47.  In addition, Plaintiff fails to cite evidence to show that Childress was involved in the decision-making process for the security guard positions.

The Court concludes that Plaintiff has not identified direct evidence of discriminatory decision-making.

---

[3] The Court cites this and other unpublished opinions for their persuasive value.  *See* 10th Cir. R. 32.1(A).

**(2) Claim of discrimination**

Defendant argues that Plaintiff does not identify evidence of discrimination or evidence that less qualified applicants were selected over Plaintiff.  Defendant submitted affidavits that the Resumix system was used to screen resumes.  [Docs. 53-5, 53-6]  Resumix uses "automated optical character recognition software to read resumes and identify the best qualified applicants by assessing the application against a set of skill criteria."  [Doc. 53-5, p. 2; Doc. 53-6, p. 2]  Both positions for which Plaintiff applied required "specialized experience" including prior security work, maintaining order and protecting life, and providing application of protective systems and techniques.  [Doc. 53-5, p. 2; Doc. 53-6, p. 2]  Resumix scored applicants according to these criteria.  Next, a cutoff score was established, and only those applicants with results above that score were referred for further consideration.

It is undisputed that Plaintiff scored a "1" on both applications.  [Doc. 53-5, p. 2; Doc. 53-6, p. 2; Doc. 53, p. 4, ¶¶ 9-10; Doc. 59, pp. 3-4 (not disputing the portion of Facts #9 & #10 reporting Plaintiff's scores of "1")]  For Vacancy Announcement WTBW10355643, there were 221 applicants, the cutoff score was "3," and 54 applicants who scored between "3" and "8" were referred for further consideration.  For Vacancy Announcement WTBW101132270CR, there were 272 applicants, the cutoff score was "2," and 146 applicants who scored between "2" and "6" were referred for further consideration.  [Doc. 53-5, p. 2; Doc. 53-6, p. 2]  Since Resumix gave Plaintiff a score of "1" on both applications, Plaintiff was not eligible for referral for further consideration on either application.  [Doc. 53-5, p. 2; Doc. 53-6, p. 2]

Defendant's Facts #9 and #10 allege that because the Resumix system screened Plaintiff's resume and scored it as "1," which was below the cutoff, no person reviewed Plaintiff's resume.  [Doc. 53, p. 4]  According to the affidavits, the Resumix system "does not take into account an

applicant's race or ethnicity, nor does it consider Veteran's status or prior EEO activity."  [Doc. 53-5, p. 3; Doc. 53-6, p. 3]  According to the affidavits, no human reviewed Plaintiff's resume or application, because the score assigned by Resumix was too low.  [Doc. 53-5, p. 3; Doc. 53-6, p. 3]  Further, the affidavits state that none of the WSMR Civilian Personnel Advisory Center employees who oversaw these two selection processes at issue in this case knew about, or considered, the race, Veteran's status, or prior EEO activities of Plaintiff or any other applicant.  [Doc. 53-5, p. 3; Doc. 53-6, p. 3]

Plaintiff disputes these allegations to the extent they state that no person reviews resumes, like Plaintiff's, receiving a score below the cutoff.  [Doc. 59, pp. 3-4]  Plaintiff asserts that Galvan testified in her deposition that she looks at the resumes and ensures that applicants qualify for the position, before referring the resumes to the manager.  [Doc. 59, pp. 3-4; Doc. 59-14, pp. 19-22]  Plaintiff understands this testimony to mean that Galvan reviews all of the resumes, contrary to Defendant's Facts #9 and #10.  Defendant's reply argues that the testimony to which Plaintiff refers, read as a whole, shows that Galvan reviews only those resumes receiving a score above the cutoff; the purpose of this review is to double-check the resumes that will be referred.  [Doc. 64, pp. 9-10]  The Court agrees with Defendant that Plaintiff misunderstands Galvan's testimony.  This determination is also fully consistent with Galvan's affidavit (and with Harris's affidavit).  [Doc. 53-6, pp. 1-2 (after Resumix ranks resumes, a cutoff score is determined and "[t]hose applicants who meet the cut off are reviewed by an HR Specialist for qualifications" and then referred) (emphasis added)); Doc. 53-5, pp. 1-2]

Citing Harris's deposition testimony, Plaintiff proffers as an undisputed fact that the "Resumix system takes into account" an applicant's race.  [Doc. 59, p. 5; Doc. 59-13, p. 33]  The cited testimony does not support Plaintiff's proffered fact.  Harris testified that an applicant's race

is "in the system," and is used when a referral list is generated.  [Doc. 59-13, p. 33]   This testimony does not state that Resumix takes race into account in scoring resumes, but only that the race of applicants scoring above the cutoff may be listed before referral.   As Defendant points out, Harris testified that the Resumix system includes a supplemental page—separate from the resume—asking a voluntary question about race and national origin; the information thus is "in the system" for those volunteering the information, but is not used unless the applicant is on the referral list for further consideration.  [Doc. 64, p. 9; Doc. 59-13, pp. 30-33]  Defendant cites Harris's and Galvan's affidavits stating that Resumix "does not take into account an applicant's race or ethnicity," and does not consider race in scoring resumes against the identified set of skill criteria identified as important to the security guard positions.  [Doc. 53-5, p. 3; Doc. 53-6, p. 3; Doc. 64, p. 8]  Plaintiff's unsupported and conclusory allegations that "Resumix used race in its selection process" must therefore be disregarded.   [Doc. 59, pp. 1, 5] *See Rocky Mountain Rogues*, 375 Fed. Appx. at 891; *Harvey Barnett, Inc.*, 338 F.3d at 1136.

Plaintiff further disputes Defendant's Facts #9 and #10 by asserting that use of Resumix is not mandatory.  [Doc. 59, p. 4; Doc. 59-9; Doc. 59-10; Doc. 59-12, pp. 32-33; Doc. 59-13, p. 9]  But the evidence cited by Plaintiff shows only the possibility of use of other methods, in general; Plaintiff cites no evidence to show that, in fact, Resumix was not used for the applications challenged by Plaintiff in this case.  [Doc. 59, p. 4]  Defendant's evidence shows that Resumix was in fact used for the applications challenged by Plaintiff.  [Doc. 53-5, p. 2; Doc. 53-6, p. 2; Doc. 64]  Plaintiff identifies no contrary evidence.

Plaintiff proffers as undisputed (unnumbered) facts:  "[l]esser qualified persons of lesser skills and lesser experience were hired for the positions, including Mr. Parra who did not have much security experience and a lesser security level than Plaintiff"; "Mr. Alizario had no security

experience"; and "[t]he applicants selected were less qualified Hispanics or Anglos."  [Doc. 59, p. 5]  Plaintiff offers as support his own belief about his qualifications and those of successful applicants, and Brande Grant's belief.  [Doc. 59, p. 5; Doc. 59-1, pp. 47-48; Doc. 59-7]  First, Plaintiff's (and Grant's) personal beliefs about their qualifications, presented as otherwise unsupported and conclusory assertions, are not sufficient to show a material factual dispute.  *See Simms v. Okla. Dep't of Mental Health Servs.*, 165 F.3d 1321, 1329 (10th Cir. 1999), *abrogated on other grounds by Martinez v. Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003).   Plaintiff fails to cite evidence showing the qualifications of Parra, Alizario, and others.  Second, Plaintiff's scores of "1," below the cutoff for both security guard positions, constitute evidence that he was either unqualified or not as well qualified as applicants who were referred for further consideration and, ultimately, hired.

The Court concludes that the proffered evidence shows:  (1) the Resumix system was used to score resumes; (2) the Resumix system does not take race into account in this scoring process; and (3) no human reviewed Plaintiff's resume because his scores of "1" placed him below the cutoff scores meriting referral for further consideration.

The Court next considers whether Plaintiff has made a prima facie case of discrimination under the *McDonnell Douglas* burden-shifting framework.  The Court concludes that Plaintiff is a member of a protected class, and that he suffered an adverse employment action (not being selected for the two security guard positions).  *See Khalik*, 671 F.3d at 1192.  Whether Plaintiff can show that he was qualified for the positions is not clear.  Plaintiff was required to point to "some evidence" that he possessed the objective qualifications necessary to perform the security guard positions sought.  *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1193.  "One purpose behind the McDonnell Douglas prima facie burden is to require a plaintiff to eliminate the most

common legitimate reasons for the adverse employment action suffered, i.e., 'an absolute or relative lack of qualifications or the absence of a vacancy in the job sought.'" *Id.* (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977)).  Defendant argues that Plaintiff's low scores of "1" show that he was not qualified.  [Doc. 64, p. 12]  Alternatively, Plaintiff's scores could be taken to show a "relative lack of qualifications."  *Id.*  Plaintiff argues that he was qualified, citing Morrison's testimony and other exhibits.  [Doc. 59, p. 11; Doc. 59-12, pp. 46, 82; Doc. 59-10]  Defendant cites additional portions of Morrison's testimony and argues that Plaintiff takes Morrison's testimony out of context.  [Doc. 64, p. 12 & n.6; Doc. 64-2, pp. 45-47, 80-82][4]  The Court need not resolve this issue, however.  Whether Plaintiff's low scores are deemed to show that Plaintiff failed to make a prima facie case, or are deemed to show a legitimate, nondiscriminatory reason Plaintiff was not selected, the Court would reach the same conclusion:  Defendant is entitled to summary judgment under either analysis.  The Court will assume arguendo that Plaintiff has shown that he was qualified.

The fourth requirement of Plaintiff's prima facie case, according to *Khalik*, is that he was treated less favorably than others not in the protected class.[5]  *Khalik*, 671 F.3d at 1192. Accepting this formulation, Plaintiff cites portions of his own testimony in an attempt to show he was given less favorable treatment.  [Doc. 59, pp. 11-12]  Plaintiff testified that others who were hired were less qualified; Plaintiff said that Parra did not have much security experience and had a lower security level than Plaintiff.  [Doc. 59-1, pp. 47-48]  Plaintiff said that Alizario had no

---

[4] The Court notes that it could rely on the exhibits attached to Defendant's reply.  *See Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006) (holding that court may rely on exhibits attached to reply provided that court does not forbid plaintiff from responding by requesting to file a surreply); *Logan v. Sabre, Inc.*, 314 Fed. Appx. 123, 125 (10th Cir. 2009) (stating that it is plaintiff's burden to request leave to file surreply if plaintiff wishes to respond to exhibits attached to reply).  Under the circumstances of this case, however, the Court need not rely on those additional exhibits.

[5] Plaintiff accepts and argues this formulation of the fourth requirement of a prima facie case.  [Doc. 59, pp. 11-12]  Alternatively, some cases treat such evidence as support for a showing of pretext, as discussed below.  *See*, *e.g.*, *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1195 n.6.  Under either analysis, the Court concludes that Defendant is entitled to summary judgment, assuming arguendo that Plaintiff met his burden to show a prima facie case.

previous security experience before working at White Sands.  [Doc. 59-1, p. 48]  Plaintiff cites the personal opinion of another applicant, Brande Grant, that less qualified persons were hired. [Docs. 59-7, 59-8]  The material cited by Plaintiff is vague and general, amounting to little more than the personal opinions of Plaintiff and Grant.  But an employee's own opinions about his qualifications as compared to those of other applicants are not sufficient to show a material factual dispute.  *See Simms*, 165 F.3d at 1329.  Without identification of further evidence showing the qualifications of Parra, Alizario, and other applicants, the Court could conclude that Plaintiff fails to show less favorable treatment than others not in the protected class—particularly when Plaintiff provides no information about other applicants' Resumix scores.

Under alternative formulations in the caselaw, however, Plaintiff met the fourth requirement—by showing that the security guard positions for which he applied were not eliminated, and were filled by other applicants.  *See Horizon/CMS Healthcare Corp.*, 220 F.3d at 1195 & n.6 (observing that *Khalik*'s statement of fourth requirement sets the strictest possible requirement for plaintiffs, and discussing caselaw requiring mere showing that positions were not eliminated or were filled).

The Court need not attempt to resolve these differences in the caselaw.  Assuming arguendo that Plaintiff has made a prima facie case of discrimination, the Court concludes that Defendant has proffered a legitimate, nondiscriminatory reason for not selecting Plaintiff and that Plaintiff failed to show that this reason is pretextual.  *See Khalik*, 671 F.3d at 1192.

Defendant's burden at this stage is one of production, not persuasion.  *Smothers*, 740 F.3d at 539.  Defendant "is required only to 'explain its actions against the plaintiff in terms that are not facially prohibited by Title VII.'"  *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003) (quoting *EEOC v. Flasher Co.*, 986 F.2d 1312, 1317 (10th Cir. 1992)).  Defendant proffers

19

Plaintiff's low scores under the Resumix system as the legitimate, nondiscriminatory reason that Plaintiff was not referred for further consideration, and not ultimately selected. As discussed above, the material before the Court shows that the Resumix system was used to score applicants, that the Resumix system does not consider race in this scoring, and that Plaintiff was not referred for further consideration because his resume showed that he did not possess enough of the skill criteria identified as important for the security guard positions. [Doc. 53-5, pp. 2-3; Doc. 53-6, pp. 2-3] Defendant established the skill set criteria deemed necessary to perform the job, and Resumix determined that Plaintiff was not well qualified (or simply not qualified), attaining scores of "1." Defendant thus proffered a legitimate, nondiscriminatory reason: Plaintiff was less qualified than the higher-scoring applicants who were referred for further consideration. Showing that Plaintiff was less qualified satisfies Defendant's burden at this stage. *See Jones*, 349 F.3d at 1266; *Carter v. Mineta*, 125 Fed. Appx. 231, 235 (10th Cir. 2005) (unpublished).

The burden then shifted back to Plaintiff to proffer evidence that this reason is pretextual. *See McDonnell Douglas*, 411 U.S. at 804; *Khalik*, 671 F.3d at 1192. Plaintiff had the burden to "counter with specific facts" showing that Defendant's stated reason for its decisions was "unworthy of credence or racially motivated." *Jones v. Eaton Corp.*, 42 Fed. Appx. 201, 208 (10th Cir. 2002) (unpublished). "This showing must be made by reference to affidavits, deposition transcripts, or specific exhibits." *Id.* Evidence sufficient to raise a genuine question of pretext may take a variety of forms. *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1198. "A plaintiff can show pretext by revealing weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action such that a reasonable fact finder could rationally find them unworthy of credence." *Garrett v.*

*Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002).  As noted above, some caselaw takes different treatment of similarly situated employees as evidence of pretext.  *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1199.

"Repeated, unsupported assertions" that Defendant's decisions were based on Plaintiff's race "are insufficient to defeat summary judgment."  *Jones*, 42 Fed. Appx. at 208.  The Court resolves doubts in Plaintiff's favor, but "mere conjecture" that Defendant's explanation was a pretext is insufficient to defeat summary judgment.  *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1225 (10th Cir. 2007).

As discussed above, the Court disregards Plaintiff's unsupported and conclusory allegations that:  "Resumix takes into account applicants' race and defendant did not use Resumix to discriminate against Plaintiff and deny him the three positions"  [Doc. 59, p. 13]; personnel employees reviewed Plaintiff's and other resumes whether above or below the cutoff score [Doc. 59, p. 14]; and lesser qualified persons were hired [Doc. 59, p. 5].  Plaintiff cites his testimony that there were nooses at the job site (though Plaintiff fails to show that any decisionmakers knew of this), and that three African Americans applied and were not selected. [Doc. 59, pp. 5-6; Doc. 59-1, pp. 23-24]  Plaintiff also cites Grant's testimony that the three not selected were more qualified.  [Doc. 59, p. 6; Doc. 59-7]  Again, the Court disregards these assertions as unsupported and conclusory assertions stating personal opinions of Plaintiff and Grant about their qualifications relative to the qualifications of successful applicants.  *See Carter*, 125 Fed. Appx. at 235-36 (concluding that plaintiff fails to show pretext by making conclusory allegation that she was the most qualified candidate for the job).  A person's own opinions about his qualifications do not give rise to a material factual dispute.  *Simms*, 165 F.3d at 1329; *Carter*, 125 Fed. Appx. at 236.

In contrast, Defendant presented undisputed evidence that Plaintiff's scores of "1" placed him below the cutoff required to show sufficient qualifications to merit referral for further consideration.  A court does not "'act as a super personnel department that second guesses employers' business judgments.'"  *Jones*, 349 F.3d at 1267 (quoting *Simms*, 165 F.3d at 1329). The court does not ask whether the employer's proffered reasons were wise, fair, or correct—but only whether the employer believed and acted upon those reasons.  *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1199.  The court typically infers pretext only when the employer relies on entirely subjective criteria.  *Jones*, 349 F.3d at 1267.  Defendant was entitled to establish a set of objective criteria, and the applicants' relative qualifications are then viewed from the employer's perspective.  *See Carter*, 125 Fed. Appx. at 237; *White v. Okla.*, 552 Fed. Appx. 840, 847 (10th Cir. 2014) (unpublished).  What matters is Defendant's perception of Plaintiff's qualifications— not Plaintiff's personal opinion of his qualifications.  *See Carter*, 125 Fed. Appx. at 237.

The Court concludes that Plaintiff has not presented evidence sufficient to raise a genuine doubt about Defendant's motivation.  *See Jones*, 349 F.3d at 1268; *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1200.  Plaintiff has not carried his burden to show pretext.

**(3)  Claim of retaliation**

Plaintiff also claims that his failure to be selected constitutes retaliation for his filing EEO charges in 2010.  [Doc. 1; Doc. 1-3]  But Plaintiff's conclusory allegations are insufficient to withstand summary judgment.  [Doc. 59, p. 1]

Plaintiff's EEO complaints in 2010 show the first element of a retaliation claim:  that Plaintiff was engaged in protected opposition to discrimination.  *See Khalik*, 671 F.3d at 1193. Failure to be selected for the two security guard positions satisfies the second part of the prima

facie case on retaliation:  a materially adverse action.  *See id.*  But Plaintiff fails to satisfy the third part of a prima facie case:  causal connection.  *See id.*

Plaintiff fails to identify evidence to show a causal connection between his 2010 EEO complaints and his unsuccessful job applications.  *See Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1263 (10th Cir. 1998).  Since Resumix assigned Plaintiff's applications too low a score to merit referral for further consideration, and the unrebutted affidavits presented by Defendant show that Resumix does not take into account prior EEO filings, Plaintiff fails to show the requisite causal connection.  [Doc. 53-5, p. 3; Doc. 53-6, p. 3]  Since, as discussed above, the persons reviewing the applications only looked at those above the cutoff score, even if Harris and Galvan knew of Plaintiff's prior EEO filings that would not show a causal connection.

Plaintiff is correct that "[a] retaliatory motive may be inferred when an adverse action closely follows protected activity."  *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).  The Tenth Circuit has held that an adverse action six weeks after protected conduct may be sufficient, even without any other evidence, but adverse action three months later, by itself, is insufficient to establish a prima facie case on causation.  *Miller v. Auto. Club of N.M.*, 420 F.3d 1098, 1121 (10th Cir. 2005), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006); *Xia v. Salazar*, 503 Fed. Appx. 577, 579 (10th Cir. 2012) (unpublished).  Plaintiff filed the EEO claim in December 2010, and was not selected for positions some time in 2011.  Even if Plaintiff had shown that the timing were close enough, an inference of causal connection is not justified against the evidence that the Resumix system did not in fact take into account prior EEO filings.

If Plaintiff had made a prima facie case of retaliation, the burden would have shifted to Defendant to respond with legitimate, nondiscriminatory reasons for Defendant's actions.  *See*

*Green*, 2014 WL 3703823, *10.   As discussed above, Defendant proffered a legitimate, nonretaliatory reason for not selecting Plaintiff; the low scores of "1" showed that Plaintiff was not qualified (or was significantly less qualified).   Plaintiff would then have been required to show that Defendant's stated reasons were pretextual.  *See id*.  On the same analysis discussed above with reference to the discrimination claim, Plaintiff failed to identify evidence sufficient to raise a genuine doubt about Defendant's motivation.  *See Jones,* 42 Fed. Appx. at 208.

Plaintiff has not made a prima facie case of retaliation.  Assuming arguendo that Plaintiff had done so, Plaintiff has not carried his burden to show pretext.  The Court concludes that Defendant is entitled to summary judgment on the claim of retaliation.

### C.  Conclusion on the 2011 Claims

The Court concludes that Defendant is entitled to summary judgment on the 2011 claims on the ground of untimely filing of the Complaint.  As an alternative and independent ground, the Court concludes that Defendant is entitled to summary judgment because there is no genuine issue of material fact for trial and Defendant is entitled to summary judgment.

### CONCLUSION

The Court concludes that there is no genuine issue of material fact for trial and Defendant is entitled to judgment.  The Court grants Defendant's motion for summary judgment on all claims.

**IT IS THEREFORE ORDERED** that *Defendant's Motion To Dismiss or in the Alternative Motion for Summary Judgment* [Doc. 53] is **GRANTED**.


_____
**UNITED STATES DISTRICT JUDGE**